## LAURA KEENE *vs.* MOSES KIMBALL.

The representation of a dramatic work, which the proprietor has no copyright of, and has previously caused to be represented and exhibited for money, is no violation of any right of property, although made without license of the proprietor; and, if not shown to have been in violation of any contract or trust, cannot be restrained by injunction.

BILL IN EQUITY, alleging that the plaintiff was and long had been the lessee and manager of a place of amusement in the

city of New York, known as Laura Keene's Theatre, and en-
gaged in the business of presenting dramatic entertainments
therein, and the defendant was the proprietor and manager of a
similar place of amusement known as the Boston Museum,
and engaged in the like business in Boston ; that in November
1858 the plaintiff, for a valuable consideration, purchased from
Tom Taylor of London in England, the author thereof, a cer-
tain comedy or dramatic composition, entitled Our American
Cousin, and took from him an absolute bill of sale and assign-
ment of the comedy and the manuscript thereof, and became
and now was the sole and absolute owner of the comedy and
manuscript, and of all the rights, privileges, benefits and profits
in any way connected with and arising out of the same; that
Taylor was a dramatic author of great celebrity, and his works
had a great value and popularity, and the plaintiff was induced
to purchase the comedy from him, by reason of his celebrity
as a dramatic author, and of its own intrinsic value and merits,
and of the profits and benefits which would accrue to her from
having the sole ownership of and right to represent this comedy,
and from the sale of rights to represent the same; that the
comedy, under an agreement with Taylor, was first produced at
her theatre, and had continued to be there represented nightly
for five months, with remarkable success; that the comedy was
of very great value to her, and that such value chiefly consisted
in having the exclusive use and possession of the comedy and
the manuscript thereof, and the sole right and privilege of rep-
resenting, and of selling the right and privilege to represent and
enact the same ; that the unauthorized use or representation
thereof by other parties and at other theatres greatly injured
the plaintiff, depreciated the value of her property in the same,
and irreparably injured her rights therein ; that the defendant,
well knowing, or having cause to know, that the plaintiff was
the sole proprietor of the comedy, that it was first produced at her
theatre, that she acquired it by the payment of a large sum to
the author, that she produced it at her theatre at great cost and
expense, that its popularity had been greatly enhanced and in-
creased by the skill and care with which it had been so pro-

duced and by her personal labor and attention, and being well aware of its value to her, and well knowing that its value chiefly consisted in the sole and exclusive use and enjoyment of the same, and of the right of representing and enacting it, and that all the benefit and profit to be derived from the comedy and the public enactment thereof belonged to her, and after being warned to desist from performing the comedy in violation of her rights, did, in wilful disregard and violation thereof, openly produce and publicly and repeatedly represent and enact the same comedy at the Boston Museum, and still continued and threatened to continue to represent and enact the same and to advertise it for future representations; that the comedy, as produced at the Boston Museum, was produced in palpable imitation of the manner in which it was produced at the plaintiff's theatre, and that the defendant had sent his artists, or some one or more of them, or some person whom he engaged to instruct them in the proper manner of performing the comedy, to witness its representation at the plaintiff's theatre, in order that that representation might be copied by the artists in said representation at the Boston Museum; that this representation was wholly unauthorized by the plaintiff, without her consent or approval, and in gross and utter disregard and violation of her rights; that the plaintiff had sustained great injury and damage by the representations heretofore given by the defendant, and apprehended that he would continue such unauthorized representations, and would irreparably injure her, depreciate the value of her property in the comedy, and deprive her of large gains and profits which would otherwise accrue to her from the representation of the comedy and from selling to others the right to represent the same; that before it was first produced by the plaintiff as aforesaid, the comedy had never been publicly enacted or represented, and had not then or ever been published or dedicated to the public at any time or in any manner, nor had she done any act relinquishing her exclusive right thereto; that she was advised that the comedy, never having been published, was not within the purview of the statutes of copyright; and that except in equity the plaintiff was remediless.

The bill prayed for a discovery and account, an injunction, damages, and further relief. The defendant filed a general demurrer, and the case was thereon reserved by *Hoar,* J. for the decision of the full court.

*G. H. Preston & D. P. Kimball,* for the defendant.

*W. D. Booth* (of New York) *& T. W. Clarke,* for the plaintiff, cited *Macklin* v. *Richardson,* Ambl. 694; *Coleman* v. *Wathen,* 5 T. R. 245; *Murray* v. *Elliston,* 5 B. & Ald. 657; *Morris* v. *Kelly,* 1 Jac. & Walk. 481; *Storace* v. *Longman,* 2 Campb. 27, note; *Roberts* v. *Myers,* 23 Law Reporter, 396; 16 Merlin, Rep. Jur. tit. Spectacle; *Abernethy* v. *Hutchinson,* 1 Hall & Twells, 28; *Southey* v. *Sherwood,* 2 Meriv. 435; Eden on Injunctions, 190; Burke on Copyright, 42; Curtis on Copyright, 65, 75, 82, 92, 103, 210, 300; *Wheaton* v. *Peters,* 8 Pet. 591; *Bartlette* v. *Crittenden,* 4 McLean, 300; *Folsom* v. *Marsh,* 2 Story R. 100; *Woolsey* v. *Judd,* 4 Duer, 385, 386; *Jefferys* v. *Boosey,* 4 H. L. Cas. 815; *Albert* v. *Strange,* 1 Macn. & Gord. 25; *Queensberry* v. *Shebbeare,* 2 Eden, 329; *Thomson* v. *Stanhope,* Ambl. 737; *Millar* v. *Taylor,* 4 Bur. 2335; *Donaldsons* v. *Becket,* 4 Bur. 2408; *St.* 1782, *c.* 58; U. S. St. 1856, *c.* 169.

Hoar, J. The argument for the plaintiff has limited the range of inquiry upon her right to maintain this bill within a very narrow compass. It is expressly admitted that she has no copyright, and can have none, in the play in question, and that nothing has been done by the defendant, which is a violation of the general statute of copyright. Nor does the plaintiff profess to show herself entitled to any protection under the U. S. St. of 1856, *c.* 169, known as the dramatic copyright act. She " rests her case solely upon her common law right of property in a literary production." What this common law right is, and whether the case made by the bill shows a violation of it, are the questions for decision by the court upon the demurrer.

Notwithstanding the ingenious and interesting argument for the defendant, derived from the principles and ideas of the Puritan founders of the Commonwealth, we can entertain no doubt that a dramatic composition is equally under the protection of law with any other literary work. Courts will not in-

terfere to vindicate the claims of any party to the exclusive enjoyment or disposal of an immoral or licentious production; but the particular application once made of this rule of the common law, in conformity with the peculiar opinions, sentiments or prejudices of one generation of men, will not control its application in a state of society where different views prevail. If our ancestors prohibited all scenic exhibitions, it was because they regarded them as immoral and pernicious. If we do not so regard them, the reason ceasing, the rule ceases with it.

Treating a dramatic work, therefore, as unquestionably the subject of a right of property, we find some principles very clearly settled by a long series of English and American decisions, which have been recognized by the counsel on both sides as lying at the foundation of this discussion.

An author has at common law a property in his unpublished works, which he may assign, and in the enjoyment of which equity will protect his assignee as well as himself. This property continues until, by publication, a right to its use has been conferred upon or dedicated to the public.

The representation of a dramatic work upon the stage is not a publication which will deprive the author or his assignee of this right of property.

While the performance of a play is not a publication which will prevent its proprietors from obtaining a copyright, or interfere with his right to resist its unauthorized publication by another, it has been settled that a play, once published by its author, may be represented on the stage by any person, without infringement upon the author's rights. This is still the rule of law, except in the cases provided for in England by the *St.* of 3 & 4 W. 4, c. 15, and subsequently by the *St.* of 5 & 6 Vict. 45; and in the United States by the U. S. St. of 1856, *c.* 169. And no case has been cited, nor are we aware that any exists, in England or America, in which the representation of a play has been restrained by injunction, where no copyright had been acquired, and where the proprietor had permitted its public representation for money, except the case of *Morris* v. *Kelly,* 1 Jac. & Walk. 481. That case was heard *ex parte* by Lord Eldon, and

the report does not show the grounds upon which the injunction was asked or granted. Unless it proceeded upon an allegation of the use of a surreptitious copy of the work, it seems to be impossible to reconcile it with the earlier case of *Coleman* v. *Wathen,* 5 T. R. 245; or with the subsequent decision in *Murray* v. *Elliston,* 5 B. & Ald. 657. In both of these cases the plaintiff was the owner of a copyright of the play, and yet its representation upon the stage was held to be no violation of his rights.

The precise question which the case at bar presents has never been determined, so far as we are aware, in any reported case. But it has been discussed with great learning and ability in a recent case in the circuit court of the United States for the Eastern District of Pennsylvania, in which the opinion was given by Judge Cadwalader. *Keene* v. *Wheatley,* 9 Amer. Law Reg. 33. The doctrine there stated, and which seems to us supported by the reasonings and analogies derived from the whole current of authorities, is briefly this : The sole proprietorship of an author's manuscript, and of its incorporeal contents wherever copies exist, is, independently of legislation, in himself and his assigns until he publishes it. An unqualified publication, such as is made by printing and offering copies for sale, dedicates the contents to the public, except so far as protection is continued by the statutes of copyright. But there may be a limited publication, by communication of the contents of the work by reading, representation, or restricted private circulation, which will not abridge the right of the author to the control of his work, any farther than necessarily results from the nature and extent of this limited use which he has made, or allowed to be made of it. And, in the absence of legislation, when a literary proprietor has made a publication in any mode not restricted by any condition, other persons acquire unlimited rights of republishing in any modes in which his publication may enable them to republish ; so that the literary proprietor of an unprinted play cannot, after making or sanctioning its representation before an indiscriminate audience, maintain an objection to any such literary or dramatic republi-

cation by others as they may be enabled, either directly or secondarily, to make from its having been retained in the memory of any of the audience. In other words, the public acquire a right to the extent of the dedication, whether complete or partial, which the proprietor has made of it to the public.

These principles sustain the demurrer to the plaintiff's bill. She has publicly represented the play, Our American Cousin, before audiences consisting of all persons who chose to pay the price charged for admission to her theatre. She has employed actors to commit the various parts to memory; and unless they are restrained by some contract, express or implied, we can perceive no legal reason why they might not repeat what they have learned, before different audiences, and in various places. If persons, by frequent attendance at her theatre, have committed to memory any part or the whole of the play, they have a right to repeat what they heard to others. We know of no right of property in gestures, tones, or scenery, which would forbid such reproduction of them by the spectators as their powers of imitation might enable them to accomplish.

The counsel for the plaintiff, in their argument, have laid much stress upon the allegation that the defendant has availed himself of a surreptitious copy of the manuscript of the play. But there is no such allegation in the bill, and no such fact is admitted by the demurrer.

It should perhaps be added, to avoid misconstruction, that we do not intend in this decision to intimate that there is any right to report, phonographically or otherwise, a lecture or other written discourse, which its author delivers before a public audience, and which he desires again to use in like manner for his own profit, and to publish it without his consent, or to make any use of a copy thus obtained. The student who attends a medical lecture may have a perfect right to remember as much as he can, and afterward to use the information thus acquired in his own medical practice, or to communicate it to students or classes of his own, without involving the right to commit the lecture to writing, for the purpose of subsequent publication in print, or by oral delivery. So any one of the audience at a

concert or opera may play a tune which his ear has enabled him to catch, or sing a song which he may carry away in his memory, for his own entertainment or that of others, for compensation or gratuitously, while he would have no right to copy or publish the musical composition. We found our opinion wholly upon the doctrine that there is nothing in the plaintiff's bill to show that the defendant has done anything beyond that which the limited dedication of the plaintiff's property to the public authorized him to do; and our decision goes no further than to hold, that the representation by the defendant of a dramatic work, of which the proprietor has no copyright, and which she had previously caused to be publicly represented and exhibited for money, is no violation of any right of property, although done without license from such proprietor, and as it does not appear to have been done in violation of any contract or trust, cannot be restrained by injunction.

*Demurrer sustained.*